```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/12/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
CATALINA WORTHING INSURANCE, LTD. :
*formerly known as* THE EXCESS INSURANCE :
COMPANY LIMITED, :
　　　　　　　　　　　　　　　　　　　　　　 :
　　　　　　　　　　　　　　Plaintiff, :
　　　　　　　　　　　　　　　　　　　　　　 :　　24-CV-4566 (VEC)
　　　　　　　　-against- :
　　　　　　　　　　　　　　　　　　　　　　 :　　OPINION AND ORDER
NEM-RE RECEIVABLES, LLC, :
　　　　　　　　　　　　　　　　　　　　　　 :
　　　　　　　　　　　　　　Defendant. :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

　　Plaintiff Catalina Worthing Insurance, Ltd. ("Catalina"), formerly known as The Excess Insurance Company Ltd. ("Excess"), initiated this action to stay the arbitration demanded by Defendant NEM-RE Receivables, LLC ("NEM RE"). Additionally, Catalina seeks a declaratory judgment that NEM RE's claims are time barred or, alternatively, that NEM RE cannot demand arbitration because it is not a party to the reinsurance agreements that purportedly contain arbitration provisions. For the reasons discussed below, Catalina's petition to stay arbitration is GRANTED, and its request for declaratory judgment that NEM RE's claims are time barred is DENIED without prejudice.

## BACKGROUND

　　The factual background underlying this action dates back more than 50 years. From 1973 through 1981, Excess (now Catalina), a United Kingdom insurance company, entered into several reinsurance agreements (the "Reinsurance Contracts") with Federated Reinsurance Company ("Federated Re"). Petition for Stay of Arbitration and Declaratory Judgment, Dkt. 1

("Petition"), ¶ 2, Ex. 1.[1]  Federated Re was an insurance company organized under the laws of the State of New York.  Petition ¶ 15.  In August 1990, Federated Re became insolvent.  *Id.* ¶ 16.  The Commissioner of Insurance of the State of New York and the Supreme Court of New York supervised its liquidation.  *Id.* ¶¶ 16–17.

From 1997 through 2003, the liquidator assessed the claims of creditors of Federated Re, as well as the obligations of its debtors.  *See id.* ¶¶ 17–22.  Catalina submitted a claim, and on June 11, 2003, the liquidator recommended an allowance to Catalina of $169,919 after it reduced the amount Federated Re owed Catalina by the amounts that Catalina owed Federated Re under the Reinsurance Contracts.  *Id.* ¶¶ 21–22.  The liquidator also solicited bids for the purchase of reinsurance recoverables due to Federated Re that had not been collected as of August 1, 2003 (the "Recoverables").  *Id.* ¶ 25.  NEM RE was the selected bidder; on January 26, 2004, NEM RE entered into an assignment agreement with Federated Re's liquidator that, according to Catalina, "grant[ed] NEM RE all rights, titles, and interest in and to the Recoverables" but did not grant NEM RE "the right to submit new reinsurance billings to Federated Re's reinsurers." *Id.* ¶¶ 26–29.

According to the Managing Member of NEM RE, at the time Federated Re entered the Reinsurance Contracts with Excess, Federated Re was a participant in the Excess Casualty Reinsurance Association ("ECRA").  Affidavit of Joseph Scognamiglio, Dkt. 7-2 ("NEM RE Aff."), ¶ 8.  Excess and Treaty Management Corporation ("ETMC") served as the pool manager "responsible for underwriting, accounting and reporting of [the] ECRA property and casualty business."  *Id.*  In June 1999, Guy Carpenter succeeded ETMC as the manager of the ECRA

---

[1] At some point before August 1990, Federated Re became known as NEM Re-Insurance Corporation.  *See* Petition ¶ 16.  To avoid confusion with Defendant NEM RE, the Court refers to NEM Re-Insurance Corporation as "Federated Re."

pool. *Id.* The accounting records transferred to Guy Carpenter, including those for Federated Re, were destroyed in the World Trade Center attack. *Id.*

In 2023, NEM RE demanded Catalina pay approximately $403,748.42 that is purportedly owed on reinsurance billings previously submitted by Federated Re under the Reinsurance Contracts. Petition ¶¶ 31–32, Ex. 1. According to Catalina, those reinsurance billings had been billed to Catalina prior to Fed Re's liquidation, but it has no records of the alleged billings. *Id.* ¶¶ 33–35. According to NEM RE, it reconstructed its claims against Catalina based on "meager records" provided by Randall & Quilter, an entity that acquired ETMC in 2010 and declared bankruptcy in June 2024. NEM RE Aff. ¶¶ 8–9. These claims have "wended their way through the international reinsurance system." *Id.* ¶ 10.

On May 28, 2024, NEM RE sent Catalina a Demand for Arbitration. Petition ¶ 37, Ex. 2. On June 14, 2024, Catalina initiated this action, seeking a stay of the arbitration and a declaratory judgment that NEM RE's claims are time barred or, alternatively, that NEM RE cannot compel Catalina to arbitrate because NEM RE is not a party to the Reinsurance Contracts that contain the putatively relevant arbitration agreement. Presumably, although not stated explicitly, because of the record retention issues described above, no party has presented the Court with a copy of any Reinsurance Contract or the assignment agreement between NEM RE and Federated Re's liquidator.

## DISCUSSION

### I. Authority to Stay Arbitration and the Controlling Standard

Although Catalina styles this action as a petition for a stay of arbitration, neither it nor NEM RE addresses the standard the Court should apply to assess this claim.

Catalina avers that the Court has subject matter jurisdiction pursuant to 9 U.S.C. § 203. Petition ¶ 10. It reasons that the Reinsurance Contracts containing the arbitration provisions

invoked by NEM RE concern a commercial relationship between citizens of the United States and the United Kingdom and, therefore, the Contracts are governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). *Id.* Alternatively, Catalina argues that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). *Id.* Catalina also maintains that the Court's authority to stay the arbitration stems not from federal law but from Article 75 of the New York Civil Practice Law and Rules, *see id.* ¶ 11 (citing N.Y. C.P.L.R. 7503(b)). This is so, it argues, because the "threshold question" of "whether an arbitration agreement exists between the parties" is determined by state law. Pl. Reply Mem., Dkt. 10, at 3 (quoting *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-4570 (LAK), 2018 WL 671258, at *1 (S.D.N.Y. Jan. 31, 2018)). Catalina notes that NEM RE cited to Section 7503(b) in its arbitration demand. *Id.* at 3 n.11. NEM RE, for its part, asserts that the Reinsurance Contracts contain "broad form arbitration clauses," but it provides no evidence to support that assertion. Def. Mem., Dkt. 7, at 2. NEM RE then misapplies case law for the proposition that Article 75 will only apply when the arbitration agreement clearly states that New York law governs both "the agreement and its enforcement." *Id.* (quoting *Diamond Waterproofing Sys., Inc. v. 55 Liberty Owners Corp.*, 4 N.Y.3d 247, 253 (2005)).

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, does not "explicitly confer on the judiciary the authority to . . . enjoin a private arbitration." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 140 (2d Cir. 2011) ("*American Express*"). The Second Circuit has held, however, that when a court determines "that the parties have not entered into a valid and binding arbitration agreement, the court has the authority to enjoin the arbitration proceedings" under the All Writs Act, 28 U.S.C. § 1651. *Id.* at 140, 141 n.20.[2] One other court in this District has relied

---

[2] In a footnote, the Circuit cabined its decision to the circumstances present in that appeal; namely, a federal district court had retained jurisdiction over a settlement agreement, and the enjoined arbitration concerned claims

on *American Express* to hold that a court may also enjoin an arbitration proceeding governed by the Convention "when the parties 'have not entered into a valid and binding arbitration agreement' or when the claims are 'not within the scope of an arbitration agreement.'" *CRT Cap. Grp. v. SLS Cap., S.A.*, 63 F. Supp. 3d 367, 376 (S.D.N.Y. 2014) (quoting *American Express,* 672 F.3d at 140). Under the FAA's procedural framework, if there is a binding arbitration agreement, most disputes are "arbitrable," meaning that they are to be decided by the arbitrators. *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 129 (2d Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002)). The one exception to the rule is that, unless the parties have unmistakably provided otherwise, courts decide questions of arbitrability. *Id.*

New York law, on the other hand, expressly provides a mechanism for a party to stay arbitration. Under N.Y. C.P.L.R. 7503(b), a party "may apply to stay arbitration on the ground that a valid agreement was not made or has not been complied with or that the claim sought to be arbitrated is barred by limitation." N.Y. C.P.L.R. 7503(b).[3] On a 7503(b) application to stay arbitration, the "petitioner has the burden of establishing the existence of evidentiary facts, sufficient to conclude that there is a genuine preliminary issue, which requires a trial and justifies a stay." *Nat'l Grange Mut. Ins. Co. v. Diaz*, 111 A.D.2d 700, 700 (1st Dept. 1985).

---

already settled and released to class members who were parties to that settlement agreement. *American Express*, 672 F.3d at 141 n.20. The Circuit appeared to broaden that holding when it later cited *American Express* for the proposition that "[f]ederal courts generally have remedial power to stay arbitration." *Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210, 213 (2d Cir. 2014) (citing *American Express*, 672 F.3d at 139–41). About a year later, however, the Circuit held that the All Writs Act does not provide a district court plenary authority to stay an arbitration, even if the arbitration implicates the claim preclusion effect of a federal judgment. *Citigroup*, 776 F.3d at 131. The Circuit reasoned that the case did not present "circumstances under which the All Writs Act authorizes district courts to enjoin arbitration to prevent relitigation of their prior judgments." *Id.* at 133.

[3]    A court applying New York law, therefore, may consider a party's argument that the claim sought to be arbitrated is time-barred in determining whether the dispute is arbitrable, N.Y. C.P.L.R. 7503(b); a court applying federal law may not engage in such analysis, *see, e.g.*, *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 121 (2d Cir. 1991) ("[A]ny limitations defense—whether stemming from the arbitration agreement, arbitration association rule, or state statute—is an issue to be addressed by the arbitrators.").

Thus, under both federal and state law, a stay can be granted if the Court determines there is no binding arbitration agreement and, under state law, the Court can determine as a threshold matter to stay arbitration if the claim at issue is time barred.

Although there is generally a presumption in favor of arbitration, that presumption does not apply here because the parties dispute whether the arbitration provisions purportedly found in the Reinsurance Contracts apply as to NEM RE. Specifically, Catalina argues that those provisions do not apply because the assignment agreement between NEM RE and Federated Re's liquidator assigned it only the right to collect on the Reinsurance Contracts; it did not broadly assign to NEM RE all of Federated Re's rights under its policies. *Cf. Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210, 215 (2d Cir. 2014) ("Because the question presented here concerns whether an arbitration agreement remains in force in light of a later-executed agreement, the presumption [of arbitrability] does not apply.").

Under both federal and New York law, questions of arbitrability are for the Court and they will "only be referred to the arbitrator if 'there is *clear and unmistakable evidence* from the arbitration agreement . . . that the parties intended that the question of arbitrability be decided by the arbitrator." *Pellegrino v. Auerbach*, No. 05 CIV. 6909(JGK), 2006 WL 565643, at *2 (S.D.N.Y. Mar. 7, 2006) (quoting *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003)).

II. **NEM RE Has Not Satisfied Its Burden to Show that There is a Binding Arbitration Agreement with Catalina**

Without the benefit of the Reinsurance Contracts that contain the arbitration provisions, the Court has not been presented with *any* evidence, let alone "*clear and unmistakable evidence*," that the parties intended the question of arbitrability to be decided by the arbitrator.

6

*Pellegrino*, 2006 WL 565643, at *2 (quoting *Shaw Grp. Inc.*, 322 F.3d at 121). Thus, the Court finds that it, and not the arbitrator, must decide whether this dispute is arbitrable.

Next, the Court must consider precisely which questions of arbitrability it has authority to address. NEM RE's position is that the FAA governs because the Reinsurance Contracts involve "interstate commerce." Def. Mem. at 1. This position is not entirely without merit, as the Second Circuit has held that the FAA "applies in federal court to diversity suits which relate to contracts involving interstate or international commerce." *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 249 (2d Cir. 1991). The "balance of more recent Second Circuit case law," however, suggests that the Court should apply New York state law, not the FAA, to determine whether the parties have a binding arbitration agreement. *Dynamic Int'l Airways, LLC. v. Air India Ltd.*, No. 15-CV-7054 (PKC), 2016 WL 3748477, at *4 (S.D.N.Y. July 8, 2016) (collecting Second Circuit cases); *see also Charter Commc'ns, Inc. v. Garfin*, No. 20 CIV. 7049 (KPF), 2021 WL 694549, at *6–7 (S.D.N.Y. Feb. 23, 2021).

New York law provides that "the party seeking arbitration must prove by a preponderance of the evidence that a valid arbitration agreement exists." *Charter*, 2021 WL 694549, at *7. This is so because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *American Express*, 672 F.3d at 127. Neither party has provided the Court with the Reinsurance Contracts or the arbitration provisions contained therein. NEM RE references the "Insolvency Clause" of the "Reinsurance Agreements," Def. Mem. at 9, but it has not seen fit to share those agreements with the Court or Catalina, if it in fact possesses them. *See* Petition ¶ 35. As to the January 26, 2004 assignment agreement between the liquidator and NEM RE, Catalina has submitted "[u]pon information and belief," that the agreement granted NEM RE "all rights, titles, and interest in and to the Recoverables only." *Id.* ¶ 28. NEM RE has not disputed that

characterization of the assignment agreement and argues only that this determination is for the arbitrator to decide.  Def. Mem. at 3–5.

On the basis of this record, NEM RE has not demonstrated by a preponderance of the evidence that an agreement to arbitrate exists between the parties.  Accordingly, under New York state law, Catalina is entitled to a stay of arbitration.

**III.   Discovery is Necessary to Determine Whether NEM RE's Claims are Time-Barred**

Having determined that the dispute between Catalina and NEM RE is not arbitrable, the Court turns to the merits of Catalina's argument that NEM RE's claims are barred by the applicable statute of limitations.  *See* Petition ¶¶ 57–66.  New York law imposes a six-year statute of limitations on breach of contract actions.  N.Y. C.P.L.R. 213(2).  The statute of limitations for a claim "for payment of a sum of money allegedly owed pursuant to a contract" begins to run when the claimant "possesses a legal right to demand payment."  *Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*, 18 N.Y.3d 765, 770 (2012) (citation omitted).

At this stage, Catalina has not carried its burden to show that all of NEM RE's claims are time-barred as a matter of law.  Lack of clarity in the present record and likely factual disputes preclude the Court from issuing declaratory judgment without discovery.  Catalina alleges, based on an ambiguous email from NEM RE, that the amounts it purportedly owes under the Reinsurance Contracts had been billed to it more than 20 years ago, prior to Fed Re's liquidation.  Petition ¶¶ 33–34.  NEM RE, however, states that the amounts due arise from asbestos claims against ECRA pool members, and the amount it is seeking to collect from Catalina "was generated from NEM RE's share of the most recent losses."  NEM RE Aff. ¶ 8.  It also notes that it has reconstructed its claims against Catalina based on "meager records" that it received at some point between 2010 and June 2024 and points to a significant loss of records while Federated Re was being liquidated.  Def. Mem. at 11; NEM RE Aff. ¶¶ 7–9.  In NEM RE's

8

telling, the losses at issue have only just now "wended their way through the international reinsurance system." NEM RE Aff. ¶ 10.

The Court cannot resolve on this very limited record whether all of the claims NEM RE now makes had ripened into billings at the time of Federated Re's liquidation; if they had, those claims would seem to now be barred by the statute of limitations, as well more than six years have passed since NEM RE was assigned the right to collect the Recoverables and thus possessed a legal right to demand payment. *See Hahn*, 18 N.Y.3d at 770. It seems, although it is not clear, that some of the claims may never have been billed because they were unknown until the records were reconstructed or because they only recently ripened into actual losses to the insurers.

Because of that factual dispute, the Court is unable to determine when the statute of limitations began to run on each claim — when the initial demand for payment was made; in 2004, when NEM RE was assigned the right to collect the Recoverables; or at some later date when NEM RE was first able to reconstruct the claims or when the claims resulted in a loss to the insurance pool. Although Catalina has alleged the "existence of certain facts," including the date of the assignment of the Recoverables, "sufficient to conclude that there is a genuine preliminary issue, which requires a trial and justifies a stay," *Nat'l Grange Mut. Ins. Co.*, 111 A.D.2d at 700, it is not entitled to declaratory relief without further discovery.

## CONCLUSION

For the foregoing reasons, Catalina's petition to stay arbitration is GRANTED. Based on the record before it, the Court DENIES without prejudice Catalina's request for declaratory judgment that the applicable statute of limitations bars NEM RE from pursuing claims under the Reinsurance Contracts. Catalina may raise this request again on summary judgment once the parties have engaged in discovery.

Pursuant to Rule 16 of the Federal Rules of Civil Procedure, the Court will enter a Notice of Initial Pretrial Conference under separate Order.

The Clerk of Court is respectfully requested to terminate the open motion at Dkt. 1.

**SO ORDERED.**

Date:  **December 12, 2024**
       **New York, New York**

                                        **VALERIE CAPRONI**
                                        **United States District Judge**